377 So.2d 229 (1979)
FEDERAL INSURANCE COMPANY, Appellant,
v.
Allan H. APPLESTEIN and the Allan H. Applestein Foundation Trust and Robert Mackin, Appellees.
Nos. 79-316 to 79-319.
District Court of Appeal of Florida, Third District.
November 20, 1979.
Rehearing Denied December 13, 1979.
*230 Bradford, Williams, McKay, Kimbrell, Hamann & Jennings and A.H. Toothman, Miami, for appellant.
Tew & Spittler and Jeffrey Allen Tew, A.B. Freed and Jerold Feuer, Miami, for appellees.
Before HENDRY, BARKDULL and SCHWARTZ, JJ.
SCHWARTZ, Judge.
Federal Insurance Company appeals from, inter alia, final summary judgments which determined that it was required to defend and to provide coverage for various aspects of an action for intentional tort brought against its alleged insureds in the Dade County Circuit Court. We hold that the allegations of the plaintiff's complaint did not bring the action within Federal's policy and therefore reverse the judgments below.
The underlying action was one brought by Robert Mackin against Allan H. Applestein and the Allan H. Applestein Foundation Trust. It was based upon claims of libel, slander, and the intentional infliction of severe emotional distress, allegedly committed by Applestein individually while acting as an agent and on behalf of the trust. The case is presently at issue in the trial court upon Mackin's fourth amended complaint, which seeks compensatory and punitive damages against both defendants. As to each of the alleged torts, that pleading specifically states, concerning the allegations about Mackin which formed the basis of the action, that
"Defendant Appelstein made said allegations in bad faith, with malice, with reckless and wanton disregard for the rights of Plaintiff in Defendant Applestein's personal quest for financial benefit and in an attempt to discredit Plaintiff."
In connection with the asserted derivative liability of the trust, each pertinent count of the fourth amended complaint alleged that Applestein was the "Managing Trustee of said Foundation" and that
"Said actions were taken with full approval and ratification of the controlling interest of Defendant Foundation . ."
The fourth amended complaint also named the present appellant, Federal Insurance, as an additional party defendant. The company had issued a "personal excess liability policy" to Applestein in which he was the named insured and the foundation trust an additional or omnibus insured. The policy provided coverage for "personal injury" which, it said,
"includes, but is not limited to:
(1) bodily injury, sickness, disease, disability, shock, mental anguish and mental injury;
(2) false arrest, false imprisonment, wrongful entry or eviction, wrongful detention, malicious prosecution or humiliation; and
(3) libel, slander, defamation of character or invasion of rights of privacy; including death resulting therefrom, sustained by any person."
It also, however, contained an exclusion which stated that the personal injury coverage
"shall not apply ... to any act committed by or at the direction of the insured with intent to cause personal injury or property damage... ."
*231 After Federal denied coverage for the liability asserted in Mackin's action against them, Applestein and the trust brought an independent action, joined by Mackin, which sought a declaratory judgment that the carrier was required to defend, and to pay any judgment recovered in the claim for compensatory damages against Applestein personally,[1] and in both the compensatory and punitive damages claims against the trust. Following extensive discovery, the trial court entered separate summary judgments in the main case and in the declaratory judgment proceeding which held Federal was bound to defend and to provide coverage for those aspects of the primary action.
Our determination to reverse those judgments is based upon the conclusion that the contents of the fourth amended complaint bring the case, as to both defendants, clearly within the terms of the "intentional injury" exclusion. It is well-settled in Florida that an insurer's duty to defend an action against its putative insured is determined by the allegations of the plaintiff's complaint. E.g., National Union Fire Ins. Co. v. Lenox Liquors, Inc., 358 So.2d 533 (Fla. 1977); Bennett v. Fidelity & Casualty Co. of New York, 132 So.2d 788 (Fla. 1st DCA 1961). No obligation to defend the action, much less to pay any resulting judgment, arises when the pleading in question shows either the non-existence of coverage or the applicability of a policy exclusion. E.g., Battisti v. Continental Casualty Co., 406 F.2d 1318, 1321 (5th Cir.1969), and cases cited. This case plainly involves the latter situation.
It has been noted that Mackin's complaint specifically claims that Applestein made his defamatory comments about him "with malice" and in a specific "attempt to discredit" the plaintiff. Notwithstanding the general term providing protection for libel, slander, and the like, these allegations completely negate coverage by conclusively establishing that the exclusion applies. The statement of the court in Employers Commercial Union Ins. Co. of America v. Kottmeier, 323 So.2d 605, 607 (Fla. 2d DCA 1975), is directly applicable here:
Employers Commercial's reliance upon paragraph B.6 of the policy which excludes coverage for `any act committed by or at the direction of the Insured with intent to cause personal injury' is misplaced. The Florida courts follow the rule that even though the act which causes an injury was intentionally done, liability coverage will not be excluded under an intentional injury exclusion clause unless the insured acted with the specific intent to cause the injury... . By the same token, a statement may be intentionally uttered which is ultimately determined to be slanderous, but if the statement was not made with the specific intent to harm the slandered party, liability coverage would not be eliminated by the intentional injury exclusion clause. ... In essence, a slanderous statement is covered by the policy unless the statement was made with the specific intent to harm which is equivalent to actual malice. [emphasis supplied]
While the Kottmeier case may be distinguishable, although not meaningfully so, because of the existence in that case of a specific exception to the libel and slander coverage which is not present in the Federal policy, the decision in Shapiro v. Glens Falls Ins. Co., 39 N.Y.2d 204, 383 N.Y.S.2d 263, 347 N.E.2d 624 (1976), is directly on point and most persuasive. At 383 N.Y.S.2d 263-264, 347 N.E.2d 625-626, the court held:
The complaint ... set forth allegations that Shapiro maliciously spoke of the plaintiffs to one or more of the limited partners in false defamatory words, asserting that the plaintiffs were `phoneying and doctoring the books and records of the Irving Place Realty Co., that they were flim flamming, cheating and stealing from the investors of the partnership' *232 and, that the words so spoken were false and defamatory, were known to said defendants to be false and defamatory and were spoken willfully and maliciously with intent to injure and damage the plaintiffs and their good name, reputation and credit.
* * * * * *
Although `personal injury' is defined to include `libel, slander, defamation of character or reputation, invasion of rights or privacy, humiliation or mental anguish', an endorsement to the policy specifically provides that with respect to the definition of `personal injury', `such insurance as is afforded by the policy does not apply * * * to any personal injury * * * caused intentionally by or at the direction of the Insured.'
Since appellant seeks coverage for an action in which it was alleged that he spoke falsely, willfully and maliciously with intent to injure, the exclusionary endorsement applies and respondent owes no duty to defend therein or to pay a judgment arising therefrom.
See also Battisti v. Continental Casualty Co., supra; cases collected in Annot., Liability Insurance  Willful Injury, 2 A.L.R.3d 1238, 1245, 1249-1250 (1965).
The fourth amended complaint also affirmatively demonstrates the non-existence of coverage for the other defendant, the foundation trust. It is alleged that the tortious acts complained of were committed by Applestein acting as the "managing trustee" of the trust, and that the trust approved and ratified that conduct. Under these allegations, the alleged wrongs must be deemed "committed by or at the direction of" the trust, within the meaning of the exclusion. Roberts v. R & S Liquor Stores, Inc., 164 So.2d 533, 535, 536 (Fla. 1st DCA 1964) is dispositive:
[I]t affirmatively appears without dispute that the assault in this case made by Mackoul on Roberts was either by the insured corporation acting through its manager Mackoul, or was at the direction of the corporation acting through its owner and vice president Schlossman who tacitly approved, ratified and confirmed the assault as committed by his manager Mackoul.
* * * * * *
[W]e are constrained to the view, and so hold, that the trial court in the case sub judice correctly held that the garnishee insurance company was entitled to judgment as a matter of law.
Accord, e.g. Consolidated Mutual Ins. Co. v. Ivy Liquors, Inc., 185 So.2d 187 (Fla. 3d DCA 1966), cert. denied, 189 So.2d 633 (Fla. 1966); cases collected in Annot., supra, at 2 A.L.R.3d 1246-1248.
The appellees contend that, even though the face of the fourth amended complaint alleges otherwise, Federal nonetheless was required to defend because the "actual facts," as developed in the subsequent discovery process, showed that the liability of the defendants, particularly the trust,[2] may not have been excluded from the coverage of the policy. We need not consider whether this argument represents an accurate view of the record, because the legal proposition upon which it is based is unsound. In National Union Fire Ins. Co. v. Lenox Liquors, Inc., supra, quashing, 342 So.2d 532 (Fla. 3d DCA 1975),[3] our supreme *233 court has clearly adopted what is said to be "the more logical view" that
"[I]n the case of a conflict between the allegations in the complaint in the action against the insured and the actual facts as known to or ascertainable by the insurer, the allegations in the complaint determine the insurer's duty to defend."
Annotation, Liability Insurer  Duty to Defend, 50 A.L.R.2d 456, 497, 498 (1956); see cases collected at 498-500. Thus, the "actual facts" of the situation are not pertinent to the issues involved in the case before us. Moreover, because it is agreed that the fourth amended complaint remains the basis for Mackin's claims against the defendants, there is no basis here for the application of the rule stated in C.A. Fielland, Inc. v. Fidelity & Casualty Co. of New York, 297 So.2d 122, 127 (Fla. 2d DCA 1974), cert. denied, 309 So.2d 6 (Fla. 1975), and cases cited, that a duty to defend may arise if claims for which coverage is provided are asserted by the plaintiff subsequent to and beyond the scope of the issues framed by his initial pleadings. National Union Fire Ins. Co. v. Lenox Liquors, Inc., supra, is determinative on this point as well.
It is finally claimed that even if, as we have held, Federal had no duty to defend the Mackin action, it was under a duty to provide "coverage," that is, to pay any judgment rendered against either or both of the defendants. This argument, which is again based on the appellees' view of the "actual facts," which they say provide coverage notwithstanding the contrary allegations of the fourth amended complaint,[4] embodies a logical and legal impossibility. Since "the insurer's duty to defend is more extensive than its duty to pay, [e.s.]" Garden Sanctuary, Inc. v. Insurance Co. of North America, 292 So.2d 75, 77 (Fla. 2d DCA 1974), there are many instances in which a company required to defend is not required to indemnify because the actual facts, as opposed to the complaint, show the non-existence of coverage. E.g., Stevens v. Horne, 325 So.2d 459 (Fla. 4th DCA 1975). The reverse, however, cannot be true. The very reason that the company is not required to defend a particular action is that "it would not be bound to indemnify the insured even though the plaintiff should prevail in his action" under the allegations of the complaint. Capoferri v. Allstate Ins. Co., 322 So.2d 625, 627 (Fla. 3d DCA 1975). It has thus been uniformly held that a determination that there is no duty to defend against a particular claim carries with it the inevitable conclusion that there is none to pay an eventual judgment which may be entered upon that claim. National Union Fire Ins. Co. v. Lenox Liquors, Inc., supra; 18 A Fla.Jur. Insurance § 814 (1971) and cases collected at note 18.
For these reasons, the judgments below are reversed and the causes remanded with *234 directions to enter ones in favor of the appellant.[5]
Reversed and remanded.
NOTES
[1] It is conceded that there is no coverage for the claim for punitive damages against Applestein himself. Northwestern National Casualty Co. v. McNulty, 307 F.2d 432 (5th Cir.1962); Nicholson v. American Fire & Casualty Ins. Co., 177 So.2d 52 (Fla. 2d DCA 1965).
[2] Specifically, it is argued (a) that Applestein was simply one of three trustees, each of whom had equal authority, rather than the "managing trustee" of the foundation as alleged in the fourth amended complaint; and (b) that, again contrary to the pleading, the trust did not ratify or approve his acts.
[3] In the Lenox Liquors case, the original complaint alleged a willful tort which was held by the trial judge to fall within the intentional injury exclusion in National Union's policy. Thereafter, the parties to the main case effected a settlement in which they stipulated:

That through discovery taken herein, parties have agreed that had settlement not been reached herein, the allegations in the Plaintiff's Complaint would have been tried upon the negligent conduct of the Defendants rather than upon the Plaintiffs' claim of willful conduct of the Defendants, and this settlement has been reached upon this basis. 358 So.2d at 534.
The lower court then held that the insurer was liable to pay the amount of the settlement and the costs of defense because of the application of
[T]he exception to the general rule relative to a liability insuror's duty to defend which is usually governed by the allegations of the complaint filed against its insured. The exception to this rule states that a liability insurer is obligated to defend its insured when such insuror has, or should reasonably be expected to have, actual knowledge of facts which brings the claim within the purview of the policy provision. 342 So.2d at 534.
This court affirmed that determination in National Union Fire Ins. Co. v. Lenox Liquors, Inc., 342 So.2d 532 (Fla. 3d DCA 1977). The supreme court, however, quashed that decision upon the holding that the stipulation and the "actual facts" were immaterial, and that the allegations of the original complaint which showed no coverage controlled. National Union Fire Ins. Co. v. Lenox Liquors, Inc., 358 So.2d 533, 536 (Fla. 1977).
At p. 13 of the 1979 pocket part to the Later Case Service, supplementing 49-55 A.L.R.2d, our decision in Lenox Liquors is correctly characterized as "recognizing that [the] insurer is to be guided by [the] actual facts of which it has knowledge." The quashal of that decision necessarily involves the supreme court's endorsement of the opposite view that "allegations, rather than known or ascertainable facts, determine [the] insurer's duty to defend."
[4] See note 2, supra.
[5] Our disposition makes it unnecessary to consider the other issues raised by Federal in these proceedings.