**Thomas AROMIN, Plaintiff–Appellant,**

v.

**STATE FARM FIRE & CASUALTY COMPANY, an Illinois corporation, Defendant–Appellee.**

No. 89–6187
Non–Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

Aug. 9, 1990.

Lisa Bennett, Coral Gables, Fla., for plaintiff-appellant.

C. Bart Billbrough, Geoffrey B. Marks, Miami, Fla., for defendant-appellee.

Before TJOFLAT, Chief Judge, FAY and COX, Circuit Judges.

PER CURIAM:

We AFFIRM the judgment of the district court for the reasons set forth in the district court's dispositive order of October 17, 1989, which appears in the appendix.

APPENDIX

HOEVELER, District Judge:

FINAL SUMMARY JUDGMENT

THIS CAUSE came before the court for a hearing upon cross-motions for summary judgment by plaintiff and defendant on May 26, 1989. Upon consideration of the arguments of counsel, the memoranda and evidence submitted and being duly advised in the premises, for the reasons set forth in the accompanying memorandum opinion, it is

ORDERED AND ADJUDGED that the plaintiff's motion for summary judgment is DENIED and the defendant's motion is GRANTED. Judgment will be entered in favor of the defendant and against the plaintiff for the reason hereafter stated.

## MEMORANDUM OPINION

*Nature of the Case*

This diversity action for breach of an insurance contract was brought by Thomas Aromin, a shooting victim, seeking recovery as a third party beneficiary against the shooter's liability insurer. In a prior state court action alleging assault and battery, judgment was entered in favor of Aromin, the plaintiff in the instant case, and against the estate of W.R. Matix, the insured who shot and seriously injured Aromin, in the amount of $1 million plus costs and interest. At the time of the shooting, Matix was insured by State Farm Fire and Casualty Company ("State Farm"), the defendant in the instant case. Aromin demanded payment by State Farm as a third party beneficiary of the insurance contract. When State Farm refused payment, Aromin brought the instant suit.

Plaintiff asserts that the language of the personal liability insurance contract issued by State Farm in favor of Matix provides express coverage for assault and battery, the tort of which the state court found Matix liable. On the other hand, plaintiff acknowledges that the policy also contains an exclusion for intentional torts. Because the two provisions conflict, plaintiff argues that the policy must be constructed in favor of coverage.

Defendant State Farm asserts that in a separate state court action, to which Aromin was not a party, the state court held that State Farm had no duty to indemnify Matix because Matix intended to harm Aromin. State Farm urges the court to reach the same conclusion as the state court on the grounds that it is against public policy to insure against intentional torts. State Farm bases its motion for summary judgment on Florida case law which prohibits coverage of intentional torts. It argues that there is a difference between a "technical" assault and battery, which it would have covered, and an intentional tort.

*Factual Background*

The underlying facts are not at issue in this case. Thomas Aromin was having a violent street-side altercation with his girlfriend when the insured, William Matix, pulled up in his car. The girlfriend turned and walked away. A hostile verbal exchange between Matix and Aromin ensued. Aromin advanced toward Matix, who shot Aromin in the groin from a distance of approximately six feet. Aromin is now a paraplegic, confined to a wheelchair.

Matix was insured by State Farm under a personal liability umbrella policy at the time of the shooting. The insurance policy provides that it will cover, in its section labeled "personal injury:"

   a. bodily injury, sickness, disease, shock, mental anguish or mental injury.

   b. false arrest, false imprisonment, wrongful eviction, wrongful detention, malicious prosecution or humiliation.

   c. libel, slander, defamation of character or invasion of rights or privacy.

   d. assault and battery.

By express terms, therefore, the insurance policy appears to extend coverage for assault and battery, the intentional tort complained of in this case. The policy also proclaims, however, that it will not provide coverage:

> [I]f you intended to cause the personal injury or property damage. We will not apply this exclusion if:
>
> a. you were acting in good faith to protect people or property; and
>
> b. your actions were not fraudulent, criminal or malicious.

The state court found that the insured was not acting in good faith to protect people or property and that his actions were not negligent, but were criminal in nature. The parties do not contest this finding.

*Discussion*

■ Under Florida law, if the provisions of an insurance contract conflict, the contract must be resolved to afford maximum coverage. *Nu–Air Mfg. Co. v. Frank B. Hall & Co.*, 822 F.2d 987 (11th Cir.1987). If the two provisions in the instant policy— one covering assault and battery, the other excluding coverage for intentional torts—

are found to conflict, the court must resolve the question of which provision prevails.

■ On the other hand, it is a cardinal principle of construction that, if reasonably possible, no part of a contract should be taken as eliminated or stricken by some other part. *Burton v. Travelers Ins. Co.* [341 Mich. 30], 67 N.W.2d 54, 55 (MI 1954). The insurer argues that the terms of its contract do not conflict because coverage extended only to the civil torts of assault and battery, not to criminal conduct. The insurer explains that civil battery—covered under the policy—requires only the general intent to cause a harmful or offensive contact, resulting in a non-consensual contact, whereas the intentional injury exclusion applies to those situations where the actor intended to cause the specific result.

General intent encompasses the intent to act, whereas specific intent is the intent to cause a specific injury. *Zordan by and through Zordan* [*v. Page*], 500 So.2d 608, 609 (Fla.Dist.Cr.App.1987). Defendants argue that if the insured has intended to strike Aromin but not to hurt him, there would have been no conflict between the coverage and exclusion provisions.

■ Under Florida criminal law, assault and battery require an affirmative, intentional act directed at another person. *Sullivan v. Atlantic Fed. Sav. & Loan Ass'n*, 454 So.2d 52 (Fla.Dist.Ct.App.1984). Negligence and even recklessness may not be enough. *Id.* at 54. Nonetheless, the State Farm policy, which extends coverage for assault and battery, excluded coverage for intentional acts. The policy does not define intent, or guide the insured through the legal niceties of specific versus general intent. Rather, the policy defines personal injury as including assault and battery on the one hand, and excludes coverage if the insured intended the personal injury—assault and battery—on the other hand. The two provisions, at first blush, appear to conflict. In fact and law, they do not. *Federal Insurance Co. v. Appelstein* [*Applestein*], 377 So.2d 229 (Fla. 3rd DCA 1979).

■ Generally, personal injury policies covering accidents or occurrences contain intentional injury exclusion clauses precluding recovery for assault and battery. *See, e.g., Hartford Fire Ins. Co. v. Spreen*, 343 So.2d 649 (Fla.Dist.Ct.App.1977) (assault and battery committed by the insured is an intentional act not covered by policies insuring against accident or excluding damages expected or intended by the insured). For example, where an accident policy contained an exclusion for intentional torts, no recovery was permitted for assault and battery, even though the policy stated that:

personal injury means

a. bodily injury, sickness, disease disability shock, mental anguish and mental injury;

b. false arrest, false imprisonment, wrongful entry or eviction, wrongful detention, malicious prosecution or humiliation;

c. libel, slander, defamation of character or invasion of rights of privacy, including death resulting therefrom, sustained by any person.

*Ladas v. Aetna Ins. Co.*, 416 So.2d 21, 22 (Fla.Dist.Ct.App.1982). Note that this policy, unlike the policy in question, does not contain a specific provision for assault and battery, but did provide coverage for other intentional torts.

The *Ladas* plaintiff, a police officer who had been injured when the insured pummeled him while being issued a traffic citation, argued that coverage should be extended because the exclusion conflicted with coverage of intentional torts in b. and c. The court held that there was no conflict because the complaint alleged that the assault was committed with the specific intent to harm, and thus the intentional tort exclusion applied. The court noted that a coverage conflict did not exist because assault and battery was not one of the specified torts in Aetna's policy. *Id.* (Note 2 p. 23). The court did not state, however, that where assault and battery were covered, there would be a conflict where the assault and battery constituted a criminal act. Indeed, reference to *Appel-*

stein [*Applestein*] (supra) would suggest otherwise.

State Farm advances what initially appears to be a compelling public policy argument against extending coverage in this situation. An essential purpose of the exclusionary language of the policy is, according to State Farm, to keep the insurance contract consistent with Florida public policy. Florida public policy, urges State Farm, prohibits enforcement of an insurance contract to cover unlawful acts committed with intent to cause a specific harm.

The appeals court in *Hartford Fire Ins. Co. v. Spreen*, 343 So.2d 649 (Fla.Dist.Ct. App.1977), held that coverage for assault and battery is against public policy where the policy covers accidents and excludes injuries which were intended. The court had before it two personal injury liability policies. *Id.* However, it extended coverage in one personal injury liability policy defining personal injuries as bodily injury, to cover the assault and battery of the insured irate husband who punched a fellow guest in the eye and caused a blow-out fracture of the orbital floor of the eye. There was exclusion as in the other policy. The court held that public policy would not prevent recovery in such case. *Spreen*, 343 So.2d at 652. As indicated, the court refused to extend coverage in the separate accident policy with an intentional tort exclusion. *Id.* at 651.

The court in *Nicholson v. American Fire & Cas. Ins. Co.*, 177 So.2d 52 (Fla. Dist.Ct.App.1965), also advanced by defendant in support of its proposition, refused to extend coverage under an automobile liability policy to a punitive damages award. Although the *Nicholson* court declared that "a person has no right to expect the law to allow him to place responsibility for his reckless and wanton actions on someone else," the policy at issue in that case merely provided that the insurer had to pay all sums for which the insured should legally become obligated damages. *Nicholson*, 177 So.2d at 54. This case is somewhat dated, though the principle is apposite. I should note, however, that the law pertaining to coverage for punitive damages has undergone significant changes.

In *Northwestern Nat'l Cas. Co. v. McNulty*, 307 F.2d 432 (5th Cir.1962), which also arose in the context of an automobile liability policy, the court found that the policy did not cover punitive damages awards. The policy at issue in *McNulty* covered bodily injury and property damage, but had an exclusion for intentional acts causing damage. *McNulty*, 307 F.2d at 433. The insurer argued that the reckless conduct for which the punitive had been awarded was the equivalent of an intentional act. *Id.* at 433. The court, however, found it unnecessary to construe the contract because it found that it would contravene public policy to extend coverage to punitive damages. *Id.* at 434. The automobile policies in those cases did not, however, purport to offer such expansive coverage as the instant personal liability umbrella policy. As indicated previously, more recent Florida cases construe personal liability policies with express intentional tort provisions in favor of coverage in some instances. *See Spreen*, 343 So.2d at 652; *Ladas*, 416 So.2d 21, 22.

While State Farm included coverage for "assault and battery" in its list of covered circumstances, it is equally clear and without ambiguity that it intended to *exclude* coverage where the insured ... "intended to cause the personal injury ..." and that the exclusion would *not* apply where the actions were not "... criminal or malicious." That the exclusion applies to the circumstances of this case seems quite clear. The question remains, though, what of the coverage for assault and battery. Assistance in finding the answer is provided by reference to the *Appelstein* [*Applestein*] case in *Ladas v. Aetna Ins. Co.* (supra). Note also part (a) of the section describing the inapplicability of the exclusion. Where one is acting in "good faith" to protect people or property, the exclusion does not apply. While the apparent conflict in the described provisions seems to create a tension in interpretation that tension is more apparent than real. There

can, no doubt, be circumstances where one is charged with an assault (threatened battery) and battery (an uninvited touching or contact) where the insured intended no harm under the circumstances. Clearly, in this case, the act was criminal (the shooting of another at close range) and the injury (or even death) intended. The coverage afforded by the policy should not and does not apply under such circumstances. Judgment will be entered for the defendant by separate order.