21-2609
*Abbey Hotel Acquisition, LLC, et al. v. Nat'l Sur. Corp.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of May, two thousand twenty-two.

PRESENT:
> JON O. NEWMAN,
> JOHN M. WALKER, JR.,
> RICHARD J. SULLIVAN,
> *Circuit Judges*.

_____

ABBEY HOTEL ACQUISITION, LLC, SETAI
HOTEL ACQUISITION, LLC, SETAI RESORT
AND RESIDENCE CONDOMINIUM
ASSOCIATION, INC., SETAI VALET SERVICES,
LLC,

> *Plaintiffs-Appellants*,

v.                                                                        No. 21-2609

NATIONAL SURETY CORPORATION,

> *Defendant-Appellee*.

_____

FOR APPELLANTS:                JOSHUA L. MALLIN (Dennis T. D'Antonio, *on the brief*), Weg & Myers, P.C., Rye Brook, NY.

FOR APPELLEE:                 BRETT SOLBERG (Michael D. Hynes, Anna K. Finger, DLA Piper LLP (US), New York, NY, *on the brief*), DLA Piper LLP (US), Houston, TX.

Appeal from a judgment of the United States District Court for the Southern District of New York (Valerie E. Caproni, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiffs-Appellants Abbey Hotel Acquisition, LLC, Setai Hotel Acquisition, LLC, Setai Resort and Residence Condominium Association, Inc., and Setai Valet Services, LLC (collectively, "Abbey Hotel") appeal from a judgment granting the motion of Defendant-Appellee National Surety Corporation ("National Surety") to dismiss Abbey Hotel's breach of contract action for failure to state a claim.   We review de novo the dismissal of a complaint under Federal Rule of Civil Procedure 12(b)(6).   *Bacon v. Phelps*, 961 F.3d 533, 540 (2d Cir. 2020). We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

2

This case is one of many in which a business seeks insurance coverage for the loss of income caused by the COVID-19 pandemic. Abbey Hotel, which owns and operates the Setai Hotel in Miami Beach, Florida, purchased an all-risk commercial property insurance contract from National Surety (the "Policy"). The Policy provisions at issue here include insurance coverage for "direct physical loss or damage" to the property. App'x at 123. Abbey Hotel also purchased an extension of coverage for the loss of business income "due to direct physical loss or damage to property at a location caused by or resulting from a covered communicable disease event" ("Communicable Disease Coverage"). App'x at 141.

In March 2020, the spread of COVID-19 prompted the governor of Florida to declare a state of emergency, and the mayor of Miami-Dade County issued an emergency order directing hotels to stop accepting most new reservations and extending existing ones (the "Emergency Order"). Naturally, this caused a precipitous decline in Abbey Hotel's business. Abbey Hotel sought reimbursement for its loss of revenue under the Policy, but National Surety refused to cover the claims; Abbey Hotel then sued for breach of contract. The district court dismissed the complaint, concluding that (1) the complaint failed to

3

allege "direct physical loss or damage" to trigger coverage under any of the relevant Policy provisions; and (2) the COVID-19 pandemic did not constitute a "communicable disease event" under the Policy. Sp. App'x at 4–6.

The first issue on appeal is whether the Policy – an all-risk commercial insurance policy providing coverage for "direct physical loss or damage" – insures against lost income resulting from the COVID-19 pandemic and related closure orders. The law of Florida, where the insured property is located, governs this dispute.[1] Abbey Hotel argues that it sufficiently alleged physical loss because "the virus physically contaminated the surfaces and air supplies in [its] premises." Abbey Hotel's Br. at 8. This argument, however, has been rejected by Florida's Third District Court of Appeal (and virtually every other federal and state court to consider it). Although the Florida Supreme Court has not yet directly ruled on this issue, Florida's intermediate appellate court recently concluded that "'direct physical loss of or damage to property' requires actual, tangible alteration to the insured property," and therefore does not extend to economic losses caused by

---

[1] The Policy does not contain a choice-of-law provision, but the parties agree that Florida law applies (and that there is no significant difference between New York and Florida law on the issue). The district court also concluded that New York's "center of gravity" choice-of-law test favored applying Florida law, Sp. App'x at 3 n.2, and the parties do not challenge that conclusion on appeal.

4

COVID-19 closure orders. *Commodore, Inc. v. Certain Underwriters at Lloyd's London*, — So.3d —, No. 3D21-0671, 2022 WL 1481776, at *6 (Fla. Dist. Ct. App. May 11, 2022). It also rejected the contention, similar to Abbey Hotel's, that COVID-19 particles on surfaces or in the air caused physical damage, observing that a structure that "merely needs to be cleaned" has not suffered direct physical loss. *Id.* (quoting *Mama Jo's Inc. v. Sparta Ins. Co.*, 823 F. App'x 868, 879 (11th Cir. 2020), *cert. denied*, 141 S. Ct. 1737 (2021)).

When construing state substantive law, "[t]his Court is bound to apply the law as interpreted by a state's intermediate appellate courts unless there is persuasive evidence that the state's highest court would reach a different conclusion." *Chufen Chen v. Dunkin' Brands, Inc.*, 954 F.3d 492, 499 (2d Cir. 2020) (citation omitted). There is no such evidence here. Even before *Commodore*, the Eleventh Circuit concluded that Florida's high court would reach the same result, noting that "every federal and state appellate court that has decided the meaning of 'physical loss of or damage to' property (or similar language) in the context of the COVID-19 pandemic has come to the same conclusion." *SA Palm Beach, LLC v. Certain Underwriters at Lloyd's London*, 32 F.4th —, No. 20-14812, 2022 WL 1421414, at *8 (11th Cir. May 5, 2022) (collecting cases applying the law of more

5

than a dozen different states). This Court reached the same conclusion when applying New York law, *see 10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, 21 F.4th 216, 222 (2d Cir. 2021) (holding that, under New York law, the terms "direct physical loss" and "physical damage" require an "actual" physical loss, and do not cover business losses caused by COVID-19), and Abbey Hotel concedes that New York law has "no significant differences" from Florida law on the issues raised here, Abbey Hotel's Br. at 12. We therefore agree with the district court that Abbey Hotel failed to allege the requisite "direct physical loss or damage" to trigger coverage under the relevant Policy provisions.

Abbey Hotel also argues that the district court erred in determining that the COVID-19 pandemic and related closure orders did not constitute a "communicable disease event" under the Policy. The Policy's Communicable Disease Coverage provision explains that:

> (1) We will pay for direct physical loss or damage to Property Insured caused by or resulting from a *covered communicable disease event* at a location including the following necessary costs incurred to:
>
>> (a) Tear out and replace any part of Property Insured in order to gain access to the communicable disease;
>>
>> (b) Repair or rebuild Property Insured which has been damaged or destroyed by the communicable disease; and

(c) Mitigate, contain, remediate, treat, clean, detoxify, disinfect, neutralize, cleanup, remove, dispose of, test for, monitor, and assess the effects the communicable disease.

(2) . . . [W]e will pay for the actual loss of business income and necessary extra expense you sustain due to [t]he necessary suspension of operations during the period of restoration.   The suspension must be due to direct physical loss or damage to property at a location caused by or resulting from a covered communicable disease event.

App'x at 141 (emphasis added).   The Policy defines a "communicable disease event" as "an event in which a public health authority has ordered that a location be evacuated, decontaminated, or disinfected due to the outbreak of a communicable disease at such location."   App'x at 175.

Abbey Hotel contends that the county mayor's Emergency Order qualified as a "communicable disease event," triggering coverage under this provision.   But even if it were true that a communicable disease event happened here, Abbey Hotel would still be entitled to reimbursement only for "direct physical loss or damage" "caused by or resulting from" such an event.   App'x at 141.   As noted above, "physical loss or damage" does not extend to the mere presence of COVID-19 particles in the air or on surfaces. This conclusion is reinforced by the fact that the Communicable Disease Coverage provision covers lost business income only "during the period of restoration," App'x at 141, which means either the date when the "property

7

at the location [is] repaired, rebuilt, or replaced" or "when business is resumed at a new permanent location," App'x at 182. The provision clearly contemplates that coverage for lost business income is appropriate only where there has been "physical, tangible alterations to the property that need to be corrected." *Commodore*, 2022 WL 1481776, at *6; *see SA Palm Beach*, 2022 WL 1421414, at *11 ("The need to repair, rebuild, replace, or expend time securing a new, permanent property is a pre-condition for coverage of lost business income and other expenses. Any alternative meaning of the terms 'physical loss' or 'physical damage' that does not require a material alteration to the property would render meaningless this pre-condition to coverage for business income loss." (quoting *Uncork & Create LLC v. Cincinnati Ins. Co.*, 27 F.4th 926, 932–33 (4th Cir. 2022))).

Abbey Hotel nonetheless argues that the Communicable Disease Coverage provision must be interpreted to provide coverage in these circumstances, because any other reading would render the provision "illusory." Abbey Hotel's Br. at 19–20. "When limitations or exclusions completely contradict the insuring provisions, insurance coverage becomes illusory." *Purrelli v. State Farm Fire & Cas. Co.*, 698 So. 2d 618, 620 (Fla. Dist.

8

Ct. App. 1997). But under Florida law, "[i]n order for an exclusion to render a policy's coverage illusory it must eliminate all – or at least virtually all – coverage in a policy." *Zucker for BankUnited Fin. Corp. v. U.S. Specialty Ins. Co.*, 856 F.3d 1343, 1352 (11th Cir. 2017) (applying Florida law). Abbey Hotel fails to explain how denying coverage here necessarily eliminates *any* possibility for coverage under the Communicable Disease Coverage provision; the mere fact that the COVID-19 virus happens to be unable to survive on surfaces for very long does not automatically mean that an insured could *never* incur physical damage to a property arising out of efforts to mitigate the spread of a communicable disease. For example, at oral argument, counsel for both sides agreed that treating an outbreak of legionella – which infects a building's water supply, including centralized air-cooling systems – may be covered under the provision.

We have considered Abbey Hotel's remaining arguments and find them to be meritless. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

9